

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN McCAFFERTY and MELISSA** | ) | |
| **McCAFFERTY, individually and on behalf** | ) | |
| **of their minor child, C.M.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No.: 2:18-cv-01276-JS** |
| **vs.** | ) | |
| | ) | |
| **NEWSWEEK MEDIA GROUP, LTD, t/a** | ) | |
| **NEWSWEEK, LLC and/or NEWSWEEK,** | ) | **JURY TRIAL DEMANDED** |
| **INC. and/or NEWSWEEK** | ) | |
| | ) | |
| **Defendant.** | ) | |

FILED

MAY 07 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk

## AMENDED COMPLAINT

Plaintiffs, Brian McCafferty and Melissa McCafferty, individually and on behalf of their minor child, C.M., by and through their attorney, Dion G. Rassias, Esquire, hereby demand compensatory and punitive damages against Defendant Newsweek Media Group, Ltd t/a Newsweek, LLC and/or Newsweek, Inc. and/or Newsweek in an amount substantially in excess of any applicable arbitration limits, exclusive of their demand for interest, costs and damages for pre- and post-judgment delay, and in support thereof, state and aver as follows:

**I.     THE PARTIES**

1.     Plaintiffs Brian McCafferty and Melissa McCafferty are adult individual residents of the Commonwealth of Pennsylvania with an address for service c/o Dion G. Rassias, Esquire, 1125 Walnut Street, Philadelphia, PA 19107. Their minor son, C.M. is also one of the Plaintiffs in this action.

2.     Defendant Newsweek Media Group, Ltd t/a Newsweek, LLC and/or Newsweek, Inc. and/or Newsweek (hereinafter collectively "Newsweek" or "Defendant") publishes a weekly magazine known as *Newsweek*.

3.     The adult Plaintiffs are members of their communities' service industry; Plaintiff Melissa McCafferty is an attorney in Chester County, Pennsylvania, and Plaintiff Brian McCafferty is a Philadelphia-based businessman.

## II.     JURISDICTION AND VENUE

4.     This Honorable Court has subject matter and specific jurisdiction over this case pursuant to the principles of diversity set forth in 28 U.S.C. § 1332, and because the amount in controversy substantially exceeds $75,000.00.

5.     Venue is appropriately situated in this Honorable Court, because the Plaintiffs reside in the Eastern District of Pennsylvania, and because the Defendant regularly, systematically and continually transacts business in this district.

6.     Defendant, either individually or through a network of distributers, regularly distributes its magazine in Philadelphia, Pennsylvania on a systematic and daily basis, and has done so for decades.  The Defendant also sells its magazine in Philadelphia on a daily basis and has done so systematically and continuously for decades.

7.     In addition, the Defendant also makes the online version of its stories, including the offending article identified more fully below, available in and throughout Philadelphia on a regular, systematic and continuous basis.

## III.     FACTUAL BACKGROUND

8.     In its January 5, 2018 through January 12, 2018 magazine, the Defendant published an article called "Trump's Mini-Mes."  A true and correct copy of the article, with the specific offending phrases highlighted in red and yellow, is attached hereto as Exhibit "A."

2

9.      Right off the bat, the offending article, in the by-line right below the bold "Trump's Mini-Mes," claims that "the alt-right" deployed a 12-year-old Trump supporter and then continues, "she's not the only kid in this weird little army."

10.      This occurs directly underneath a photograph of Plaintiff C.M.

11.      Obviously, the clear inference is that C.M. is another "kid" in the weird army.

12.      Thus, *Newsweek* is both directly stating and falsely implying, factually, that the alt-right has created a weird little army and that C.M. is a part of it. These are *Newsweek*'s own words, and are not capable of anything but their plain and ordinary meaning, all as published underneath a photograph of C.M.

13.      *Newsweek* has declared factually that C.M. has been "deployed" by the alt-right in a "weird little army." Then, the offending article gets even worse. On the same page, *Newsweek* states factually that the purpose of this weird little army is to support and defend racism (a potential crime) and sexual abuse (an actual crime). Specifically, *Newsweek* states, "these kids are being weaponized,...[to] defend[] raw racism and sexual abuse."

14.      Continuing, the Defendant wrote, edited and/or published its offending article, with C.M.'s picture, touting that it is "repulsive" to feature children as potential spokespersons, claiming that the voices behind C.M. are "hiding" behind children as part of a sinister plot to weaponize children through the seduction of becoming "a celebrity."

15.      The obvious inference created by the offending article is that not only is C.M. part of the alt-right's weird little army that is out to support and defend racism and sexual abuse, is the direct inference that C.M.'s parents have permitted such "weaponization" of their child, that they are "the voices behind" their child, to be a part of this alt-right army that supports and defends raw racism and sexual abuse.

3

16.     In reality, it is *Newsweek* itself that is disgracefully "weaponizing" children through its article.

17.     In fact, one of *Newsweek*'s editors recently admitted that, "The sexual abuse of children will always exist.  You can never eliminate it.  Sometimes it leads to great art."  Thus, *Newsweek* condones an editorial belief that pedophilia is potentially "great art," and now, this article deliberately weaponizes children to promote racism and sexual abuse, all for a desperate *Newsweek* to sell magazines.

18.     *Newsweek*'s motivation for such substandard journalism must be, at least in part, its declining and anemic sales and online hits.

19.     The offending article directly and indirectly falsely also reports that C.M.'s parents are scripting his words and actions.

20.     To forever link C.M. and his parents to supporting and defending racism and/or sexual abuse in any manner whatsoever is false, defamatory and outrageous, and no reasonable journalist or editor could possibly believe that what was written is true.  As such, this constitutes a reckless and malicious publication of false facts and inferences.

21.     *Newsweek*, faced with anemic sales, a burgeoning federal investigation, and a forever dwindling readership, chose to aggressively and maliciously sensationalize children through these completely false facts and innuendo, all in an effort to create interest in its struggling publication with a despicable journalistic tactic that *Newsweek* itself refers to as "click bait."

4

22.     Then, to make these dubious factual conclusions much worse, *Newsweek* links C.M. – by his picture and by words – to supporting and defending the crimes of racism and sexual abuse, which is, of course, despicable beyond words and a demonstrably false fact.

23.     In the ultimate disregard of the Plaintiffs' rights, *Newsweek* never even tried to contact the parents, or C.M., to discuss the facts set forth in  its ridiculously offensive and false article.

24.     *Newsweek* continues to publish the article to this day on its website.

25.     At no time did *Newsweek* have the Plaintiffs' consent to publicize the minor Plaintiff's picture in this regard and for its own commercial gain.

26.     As a result of the foregoing, the Plaintiffs have sustained harm, damages and injuries, including general reputational damages.

## COUNT I – FALSE LIGHT
### All Plaintiffs v. Defendant

27.     The allegations of paragraphs 1-26 above are incorporated herein as though fully set forth at length.

28.     The offending article publishes facts and innuendo which hold the Plaintiffs in false light in that:

      a. C.M. has never been deployed for anything by the alt-right;

      b. C.M. is not a member of the alt-right;

      c. C.M. is not a part of a "weird little army" and never has been;

      d. C.M. has never been weaponized by anyone;

      e. C.M. has never supported or defended racism (a potential crime);

      f. C.M. has never supported or defended sexual abuse (a crime);

5

g.  C.M. has never been a spokesperson for the alt-right or anything even remotely related to racism;

h.  C.M. has never been a spokesperson for the alt-right or anything even remotely related to sexual abuse;

i.  C.M. has never read chapter and verse of a text written by anyone else;

j.  C.M. does not revel in a chance to "show off;"

k.  C.M. has never been promised any type of celebrity status for anything, no less the expression of protected First Amendment rights; and

l.  C.M. never authorized the use of his picture by the Defendant.

29.  The offending article holds the parent-Plaintiffs in false light in that:

a.  They have never used their child or authorized their child to be a spokesperson for anything, much less the crime(s) *Newsweek* has imputed to them or their son;

b.  They have never supported or defended sexual abuse, or any other criminal conduct, in any fashion, individually or through their child;

c.  They have never supported or defended racism, or any other criminal conduct, in any fashion, individually or through their child;

d.  They have never permitted their child to be weaponized by anyone else;

e.  They have never weaponized their child;

f.  They have never prepared a written text for their child for any First Amendment expression;

g.  They have never seduced their child with the promise of celebrity status for any reason;

h.  They have never authorized their child to be "deployed" by the alt-right; and

i.  They have never permitted their child to be a part of any "little army," weird or otherwise.

30.     The offending article was published and/or distributed by the Defendant.

31.     It is evident that the offending publication at issue applies to the Plaintiffs, especially since C.M.'s picture previews the entire article.

32.     *Newsweek* published an article that, as explained in detail above, created several false impressions, which culminated with a knowing or reckless portrayal of C.M. as a member of a weird little army that is used by the alt-right as a weapon to defend raw racism and sexual abuse. In so doing, the offending publication also has created the false impression that C.M.'s parents are directly or indirectly responsible for C.M.'s participation in events and organizations that he is not a participant in and does not condone.

33.     *Newsweek* has therefore subjected all of the Plaintiffs to unreasonable and highly objectionable publicity, attributing to them characteristics, conduct and/or beliefs that are completely false. Therefore, C.M. and his parents have been placed before the public in an entirely false position.

34.     The false light that the Defendant has put the Plaintiffs in is of a kind that would be highly offensive to any reasonable person, because of the false representation of their character, history, activities and beliefs, and that serious offense would obviously be taken by any reasonable person in each Plaintiff's position. The offending article described above in detail unreasonably implies false and defamatory facts and associations which none of the Plaintiffs have participated in or adhered to, which were completely exacerbated by the fact that the Defendant chose to publish C.M.'s picture as a headliner to the offensive article.

35.     The conduct of the Defendant with respect to such false light reporting has served to disgrace the Plaintiffs. It is not "an opinion" to write that C.M. has been weaponized. It is not "an opinion" to write that C.M. is part of a weird little alt-right army. It is not "an opinion" to

7

write that C.M. defends raw racism or sexual abuse. It is further not an opinion to write that C.M. is reading chapter and verse from a text written by someone else or has been seduced with the promise of celebrity status. These are all factual statements which are wrong.

36.     There is no possible innocent interpretation of the publication identified more fully above; it is a heinous, horrendous, demonstrably false and malicious message, and the Defendant knew that writing these facts was false and should never have occurred.

37.     The offending article contains a series of lies and innuendo for which the Defendant must be held accountable. As a direct and proximate result of the Defendant's deliberate and/or reckless misconduct as set forth in detail above, the false light invasion of the Plaintiffs' privacy has caused mental suffering, anguish, shame and humiliation for the Plaintiffs, just as it would for any reasonable person of ordinary sensibilities who find their child under such a highly offensive, national attack.

38.     The Defendant has removed the photograph of C.M. at the time of this filing, and discovery will confirm how long the photograph was, in fact, maintained on the Defendant's website and social media accounts.

39.     Plaintiffs seek compensatory and punitive damages as a result of the Defendant's outrageous conduct identified above.

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount in excess of the arbitration limits, together with costs of this litigation, delay damages, interest and any further relief this Honorable Court deems just and appropriate.

### COUNT II – DEFAMATION
### All Plaintiffs v. Defendant

40.     The allegations of paragraphs 1-39 above are incorporated herein as though fully set forth at length.

8

41.    The offending article publishes facts and innuendo which are defamatory in that:

    a.   C.M. has never been deployed for anything by the alt-right;

    b.   C.M. is not a member of the alt-right;

    c.   C.M. is not a part of a "weird little army" and never has been;

    d.   C.M. has never been weaponized by anyone;

    e.   C.M. has never supported or defended racism (a potential crime);

    f.   C.M. has never supported or defended sexual abuse (a crime);

    g.   C.M. has never been a spokesperson for the alt-right or anything even remotely related to racism;

    h.   C.M. has never been a spokesperson for the alt-right or anything even remotely related to sexual abuse;

    i.   C.M. has never read chapter and verse of a text written by anyone else;

    j.   C.M. does not revel in a chance to "show off;"

    k.   C.M. has never been promised any type of celebrity status for anything, no less the expression of protected First Amendment rights; and

    l.   C.M. never authorized the use of his picture by the Defendant.

42.    The offending article is defamatory with regard to the parent-Plaintiffs in that:

    a.   They have never used their child or authorized their child to be a spokesperson for anything, much less the crime(s) *Newsweek* has imputed to them or their son;

    b.   They have never defended sexual abuse, or any other criminal conduct, in any fashion, individually or through their child;

    c.   They have never defended racism, or any other criminal conduct, in any fashion, individually or through their child;

    d.   They have never permitted their child to be weaponized by anyone else;

    e.   They have never weaponized their child;

     f.   They have never prepared a written text for their child for any First Amendment expression;

     g.  They have never seduced their child with the promise of celebrity status for any reason;

     h.  They have never authorized their child to be "deployed" by the alt-right; and

     i.   They have never permitted their child to be a part of any "little army," weird or otherwise.

43.    The offending article was published and/or distributed by the Defendant.

44.    It is evident that the offending publication at issue applies to the Plaintiffs, especially since C.M.'s picture previews the entire article.

45.    The offending article ascribes to the Plaintiffs certain conduct, character and/or conditions that adversely affect their reputations.

46.    The conduct of the Defendant with respect to such defamatory reporting has served to disgrace the Plaintiffs. It is not "an opinion" to write that C.M. has been weaponized. It is not "an opinion" to write that C.M. is part of a weird little alt-right army. It is not "an opinion" to write that C.M. defends raw racism or sexual abuse. It is further not an opinion to write that C.M. is reading chapter and verse from a text written by someone else or has been seduced with the promise of celebrity status. These are all factual statements which are wrong

47.    There is no innocent or justifiable, non-defamatory interpretation of this offending article. The Defendant knew that writing these facts was false and should never have occurred.

48.    There is no doubt that the effect of this offending article would cause great harm to the general reputation of the Plaintiffs and lower them in the estimation of their community in the minds of average readers.

10

49.     At no time did the Defendant ever attempt to contact C.M. or C.M.'s parents but instead, bombastically published the falsities written above underneath a picture of C.M.

50.     As a direct and proximate result of the conduct set forth at length above, the Plaintiffs have endured mental suffering, shame and humiliation, all as would obviously be perceived by any reasonable person of ordinary sensibilities whose child was labeled as a member of an alt-right, weird little army who is weaponized to defend raw racism and sexual abuse, based upon text written by somebody else, and seduced with the promise of becoming a celebrity.

51.     The Defendant has removed the photograph of C.M. at the time of this filing, and discovery will confirm how long the photograph was, in fact, maintained on the Defendant's website and social media accounts.

52.     Plaintiffs seek compensatory and punitive damages as a result of the Defendant's outrageous conduct identified above.

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount in excess of the arbitration limits, together with costs of this litigation, delay damages, interest and any further relief this Honorable Court deems just and appropriate.

## **NOTICE OF PRESERVATION OF EVIDENCE**

PLAINTIFFS HEREBY DEMAND AND REQUEST THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS,

OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE

SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF

THIS COMPLAINT.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

THE BEASLEY FIRM, LLC

BY:    */s/ Dion G. Rassias*
        DION G. RASSIAS, ESQUIRE
        Attorney I.D. No.: 49724
        1125 Walnut Street
        Philadelphia, PA 19107
        (215) 592-1000
        (215) 592-8360 (facsimile)

DATED:  May 7, 2018

FILED

MAY 07 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk

Exhibit

A

Putin's American Sock Puppet / Biden's Last Chance

01.05.2018-01.12.2018

# Newsweek

## Make Trump Great

Steve
Bannon
says he
knows how
to

even if it
means
killing the
Republican
Party



$9.99

01>

**Periscope**



POLITICS

# Trump's Mini-Mes

The alt-right deployed a 12-year-old Trump supporter to interview Roy Moore on the eve of the special Senate election. She's not the only kid in this weird little army

JUST KIDDING Both ███, left, and Millie, seen here with prime-time Fox News host Laura Ingraham, have gone viral with videos in which they tout all things Trump.

↗ WATCH MILLIE MARCH OR ███
███ both of them 12, expound about their love of President Donald Trump and the platforms and candidates he endorses (most recently, Millie deployed to Alabama for a cute-if-it-weren't-so-contextually-creepy interview with Senate candidate Roy Moore), and you'll notice that they both speak like Trump. And like him, they seem very comfortable in front of the cameras.

Here's Millie on Trump in a 2017 video interview with Jennifer Lawrence, vice president of the America First Project,

BY

**GRAHAM LANKTREE**
🐦 @g_lanktree

a populist-nationalist super PAC: "One of the other reasons I like him is because, and this is my favorite reason: 'We will build a waaaallll on our southern borders. And Mexico, no buts about it, Mexico will paaaay for the wall.'" Or ███ to Infowars's Alex Jones, last October: "By the way, I saw your interview with Megyn Kelly; you got her good. You got her good. She thought she was going to make a fool of you, but you turned it around, and you proved her to be a liar."

Both instances demonstrate how Trump supporters are recruiting children as spokespeople. Jones, once he got done digressing to his 12-year-old guest about Kelly's hotness, hailed ███ as part of the new wave of resistance to the "globalists"—a term the Anti-Defamation League considers an anti-Semitic dog whistle. "These kids are being weaponized," says Todd Gitlin, professor of journalism and sociology at Columbia University. He says the Millie and ███ interviews "camouflage" positions of the hard right "as feel-good sweetness and light, when, in fact, they are defending raw racism and sexual abuse."

Both Republicans and Democrats use kids for political purposes, Gitlin adds. Before the 2016 election, J.J. Holmes, a 12-year-old from Florida who suffers from cerebral palsy, preprogrammed his computerized speech device to chant "Dump Trump" and "Trump mocks the disabled" and then hit Play at a Trump rally in Tampa. (He was booed by the crowd, and he and his family were escorted

out.) Days later, J.J. gained even more media attention when he met President Barack Obama (thanks to the intervention of a reporter) at a campaign event in Kissimmee.

But there is a big difference, Gitlin says, between demonstrating at rallies and being held up as political pundits in videos intended to go viral. "What I find repulsive is featuring children as spokespersons. That's hiding behind children." The younger they are, "the more [likely] they're being made use of in a fashion that is unseemly."

Millie's big break came last February at the 2017 Conservative Political Action Conference, where the America First Project published the video of her talking about Trump's wall, his positions on illegal immigration and how she believes teachers unions control American education. The video has earned nearly 750,000 views.

Several former Breitbart News employees started the America First Project, which also organized Millie's interview with Moore. One of them, Patrick Howley, told *The Atlantic* early this year that he quit Breitbart because he believed it had gone mainstream after Steve Bannon left the organization to run the Trump campaign in August 2016. During the campaign, Bannon characterized Breitbart as a platform for the so-called alt-right, a loose-knit group of nationalists, white supremacists and conspiracy theorists. Infowars's Jones caters to the alt-right in his politics and screeds. Howley described the America First Project as an "advocacy organization that is going to advocate for Trump administration policies that generally fall under a populist-nationalist window."

In his interview with Millie, Moore supported sending America's military to the U.S.-Mexico border to stop illegal immigration. He has also spoken against homosexuality.

Recently, he said the last time America was "great" was during slavery, and he has advocated for doing away with constitutional amendments against the institution. Millie did not ask Moore about the sexual-assault accusations against him.

"The picture has been painted that Millie does not have the ability to think for herself or that somehow she was forced into going to Alabama," America First's Lawrence says in an email to *Newsweek*. "To believe that takes away from the amazingly talented little girl that Millie March is and the force she brings to the entire political movement." Millie did not respond to a request for an interview.

"She is better spoken and a better

## "What I find repulsive is featuring children as spokespersons. That's hiding behind children."



interviewer than most people working for mainstream media outlets today," Lawrence adds. "We were contacted by Millie's father, Frank, about Millie wanting to go to Alabama to campaign for Judge Roy Moore—someone who she met in the past—following the allegations that were brought against him by attorney Gloria Allred."

Allred represents Beverly Young Nelson, who says Moore sexually assaulted her while he was a district attorney in his 30s and she was 16. A woman named Leigh Corfman accuses Moore of assaulting her when she was 14. Multiple other women have shared stories about how Moore pursued them when they were teens.

"Besides what you see in the video, Millie knocked on doors, phone-banked and attended church with Judge Moore and his family," Lawrence says, pointing out that "*alleged* is the key word" in the accusations against him.

Paul Begala, a longtime Democratic strategist, said Millie's interview with Moore is at best a case of very poor judgment by her handlers. "Words fail me," he said on CNN after the America First Project published the interview. "The fact that he's accused of sexually assaulting a 14-year-old girl and would sit down with a 12-year-old [girl], when he's not talking to any journalists..."

"These kids are reveling in the chance to show off," Gitlin says. "They're getting the chance to be little celebrities. If a kid is...reading chapter and verse a text written by somebody else, and is circumventing grown-up questions, then I think that's bait-and-switch politics.

"There's a sinister quality to this. Kids are being seduced with the promise of being celebrities. In this case, the instigators are recruiting for a sort of boys' and girls' auxiliary, for what they believe to be a sacred crusade." ◼

FROM LEFT: MARIA YOUNG; JEFF MALET/NEWSCOM

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BRIAN McCAFFERTY and MELISSA McCAFFERTY, individually and on behalf of their minor child, C.M. | NEWSWEEK MEDIA GROUP, LTD t/a NEWSWEEK, LLC and/or NEWSWEEK, INC. and/or NEWSWEEK |

| (b) County of Residence of First Listed Plaintiff   Philadelphia | County of Residence of First Listed Defendant   New York |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Dion G. Rassias, Esquire, The Beasley Firm, LLC, 1125 Walnut Street, Philadelphia, PA 19107 | Michael Berry, Esquire, Ballard Spahr, LLP, 1735 Market Street, 51st Floor, Philadelphia, PA 19103 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❑ 1  U.S. Government Plaintiff

❑ 3  Federal Question
      *(U.S. Government Not a Party)*

❑ 2  U.S. Government Defendant

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - Product Liability | ❑ 690 Other | ❑ 423 Withdrawal 28 USC 157 | ❑ 376 Qui Tam (31 USC 3729(a)) |
| ❑ 130 Miller Act | ❑ 315 Airplane Product Liability | ❑ 367 Health Care/ | | | ❑ 400 State Reapportionment |
| ❑ 140 Negotiable Instrument | ❑ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| ❑ 150 Recovery of Overpayment & Enforcement of Judgment | ❑ 330 Federal Employers' | Product Liability | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| ❑ 151 Medicare Act | Liability | ❑ 368 Asbestos Personal | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 152 Recovery of Defaulted Student Loans | ❑ 340 Marine | Injury Product Liability | | ❑ 835 Patent - Abbreviated New Drug Application | ❑ 460 Deportation |
| (Excludes Veterans) | ❑ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❑ 840 Trademark | ❑ 470 Racketeer Influenced and Corrupt Organizations |
| ❑ 153 Recovery of Overpayment of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❑ 480 Consumer Credit |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle Product Liability | ❑ 371 Truth in Lending | ❑ 710 Fair Labor Standards Act | ❑ 861 HIA (1395ff) | ❑ 490 Cable/Sat TV |
| ❑ 190 Other Contract | ❑ 360 Other Personal Injury | ❑ 380 Other Personal Property Damage | ❑ 720 Labor/Management Relations | ❑ 862 Black Lung (923) | ❑ 850 Securities/Commodities/ Exchange |
| ❑ 195 Contract Product Liability | ❑ 362 Personal Injury - Medical Malpractice | ❑ 385 Property Damage Product Liability | ❑ 740 Railway Labor Act | ❑ 863 DIWC/DIWW (405(g)) | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | | | ❑ 751 Family and Medical Leave Act | ❑ 864 SSID Title XVI | ❑ 891 Agricultural Acts |
| | | | ❑ 790 Other Labor Litigation | ❑ 865 RSI (405(g)) | ❑ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❑ 895 Freedom of Information Act |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | | ❑ 870 Taxes (U.S. Plaintiff or Defendant) | ❑ 896 Arbitration |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | | ❑ 871 IRS—Third Party 26 USC 7609 | ❑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate Sentence | | | |
| ❑ 240 Torts to Land | ❑ 443 Housing/ Accommodations | ❑ 530 General | | | ❑ 950 Constitutionality of State Statutes |
| ❑ 245 Tort Product Liability | ❑ 445 Amer. w/Disabilities - Employment | ❑ 535 Death Penalty | **IMMIGRATION** | | |
| ❑ 290 All Other Real Property | ❑ 446 Amer. w/Disabilities - Other | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 448 Education | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration Actions | | |
| | | ❑ 550 Civil Rights | | | |
| | | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❑ 1 Original Proceeding

☒ 2 Removed from State Court

❑ 3 Remanded from Appellate Court

❑ 4 Reinstated or Reopened

❑ 5 Transferred from Another District *(specify)*

❑ 6 Multidistrict Litigation - Transfer

❑ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1332

Brief description of cause:
Defamation and False Light

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ❑ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE  05/07/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| BRIAN McCAFFERTY and MELISSA McCAFFERTY, indiv. and on behalf of their minor child, C.M. | : : : | CIVIL ACTION |
| v. | : | |
| NEWSWEEK MEDIA GROUP, LTD t/a NEWSWEEK, LLC and/or NEWSWEEK, INC. and/or NEWSWEEK | : : | NO.   2:18-cv-01276-JS |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X)


| | | |
|---|---|---|
| May 7, 2018 | Dion G. Rassias, Esquire | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-592-1000 | 215-592-1523 | dgr@beasleyfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __c/o Counsel, 1125 Walnut Street, Philadelphia, PA 19107__

Address of Defendant: __7 Hanover Square, 5th Floor, New York, NY 10004__

Place of Accident, Incident or Transaction: __National publication Newsweek__
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐ No☒

Does this case involve multidistrict litigation possibilities?        Yes☐ No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
        Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
        Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?        Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
        Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify) Defamation & False Light
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, ___Dion G. Rassias___, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __May 7, 2018__        _____        ___49724___
                        Attorney-at-Law        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __May 7, 2018__        _____        ___49724___
                        Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)